UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT ACOSTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-0378-B |
| | § | |
| FAIR ISAAC CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Fair Isaac Corporation's Motion to Compel Arbitration and Dismiss (doc. 3) (hereinafter, the "Motion"). Having considered the Motion, the Court is of the opinion that it should be and hereby is **GRANTED**.

## I.

## BACKGROUND

This case arises out of Plaintiff Robert Acosta's employment with Defendant Fair Isaac Corporation (hereinafter, "Fair Isaac"). Acosta worked as an Account Executive for Fair Isaac selling its software licenses and services. (Pl.'s Orig. Pet. 2-3.) His compensation was governed by the terms and conditions of Fair Isaac's Sales Compensation Plan. (*Id.*) Specifically, this plan dictated how Acosta's commission payments were to be calculated. (*Id.*)

Acosta alleges that in 2004 he made a sale to a customer, State Compensation Insurance Fund, valued at approximately $21 million. (*Id.* at 4.) He avers that Fair Isaac failed to fully compensate him for this sale in accordance with the Sale Compensation Plan's commission payment provisions. (*Id.*) Acosta claims that Fair Isaac owes him a total of $282,636.99 in unpaid

- 1 -

commission. Accordingly, Acosta filed the instant suit on January 30, 2009, asserting various contract causes of action in an effort to obtain the compensation he alleges he is entitled to under the Sales Compensation Plan. (*Id.* at 9-12.)

A condition of Acosta's employment with Fair Isaac was that he enter into an "Agreement to Arbitrate Claims" (hereinafter, "Agreement") in 2001. In relevant part, the Agreement states:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ('claims") whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company.

(Def.'s App. in Supp. of Mot. 8-10.)

Citing the Federal Arbitration Act ("FAA") and the California Arbitration Act ("CAA"), Fair Isaac filed the instant Motion asking the Court to dismiss Acosta's claims and compel the parties to participate in arbitration. The Motion being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

The Federal Arbitration Act "'is a congressional declaration of a liberal policy favoring arbitration.'" *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In keeping with this principle, any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone,* 460 U.S. at, 24-25. Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

Determining whether parties have agreed to arbitrate their claims and thus ordered to arbitration involves a two-part inquiry. First, a court must ascertain: " whether there is a valid agreement to arbitrate between the parties;" and, next,..."whether the dispute in question falls within the scope of that arbitration agreement." *Pers. Sec. & Safety Sys. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001)).

The existence of a valid agreement is determined by reference to "ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938 (1995)). Once the existence of a valid arbitration agreement is established, the court must decide if the parties' dispute is within the reach of the agreement. *See In re Complaint of Hornbeck*, 981 F.2d at 754. Deciding the reach or scope of the agreement involves distinguishing between two types of arbitration agreements: broad and narrow. *Id*. If the court determines that the agreement is broad, all judicial proceedings should be stayed and the parties compelled to arbitration claim at issue should be referred to an arbitrator. *Id.* Moreover, if all of the issues raised in the district court must be referred to arbitration under 9 U.S.C. § 3, dismissal with prejudice rather than a stay is appropriate. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In contrast, if the agreement is narrow, the court must determine whether the given dispute is governed by the arbitration agreement in the first instance. *See In re Complaint of Hornbeck*, 981 F.2d at 755.

In making the foregoing determination, courts may look beyond the pleadings and motion papers to evidence submitted by the parties. *Falbe v. Dell, Inc.*, No. 04-C-1425, 2004 WL 1588243, at * 1 n. 1 (N.D. Ill. Dec. 10, 2001) (citing *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d

188, 191 (7th Cir. 1993). There is, however, no requirement that an evidentiary hearing be convened on motions to compel arbitration. *Armstrong v. Associates Int'l Holdings Corp.,* No. 06-11177, 2007 WL 2114512, at *4 (5th Cir. 2007); 9 U.S.C. § 4. Here, the parties have submitted evidence for the Court's consideration but have not requested an evidentiary hearing and the Court finds a hearing unnecessary in resolving the motion.

### III.

### ANALYSIS

Fair Isaac asks the Court to dismiss Acosta's claims and compel the parties to participate in arbitration proceedings. Acosta responds that the Agreement is invalid and unenforceable because it is unconscionable. The Court will first assess the validity of the proffered Agreement and subsequently analyze its scope.

A.      *The Existence of a Valid Arbitration Agreement*

Acosta alleges that the Agreement should be invalidated because it is unconscionable under California law. As explained *supra*, state law principles of contract law dictate the validity of the parties' arbitration agreement. The Court will look to the law of California, as the arbitration agreement provides that California law governs its terms and the parties do not dispute the validity of this clause. *Overstreet v. Contigroup Cos.,* 462 F.3d 409, 411-12 (5th Cir. 2006); *see also Wasserman v. We The People Forms and Service Centers USA, Inc.,* No. 3:07-CV-0606-D, 2007 WL 2228617, at *4 (N.D. Tex. August 3, 2007) (applying California law where the agreement at issue specifies that California law applies and the parties use California law to support their legal arguments).

Under California law, an agreement to arbitrate is subject to revocation upon a finding that it is unconscionable. *Roman v. Superior Court of Los Angeles County*, 172 Cal.App.4th 1462, 1468 (Cal. Ct. App. 2009). Unconscionability has procedural and substantive elements. *Id.* While both elements must be present to give rise to revocation, courts use a sliding scale so that they need not be present to the same degree. *Id.* at 1469. Thus, the more evidence of substantive unconscionability, the less evidence of procedural unconscionability that is necessary to support a finding that the contract is unenforceable, and vice versa. *Id.*

i.  Procedural Unconscionability

Acosta claims the Agreement is a contract of adhesion and therefore procedurally unconscionable. Procedural unconscionability concerns the circumstances under which parties enter into a contract. A court's inquiry will focus on two elements: oppression and surprise. *A&M Produce Co. v. FMC Corp.*, 186 Cal.Rptr. 114, 121 (Cal. Ct. App. 1982); *Roman*, 172 Cal.App.4th at 1469. The oppression component "arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Id.* Surprise is present when the terms requiring arbitration are hidden within the text of a printed document drafted by the party with the superior bargaining position. *Id.*

California courts have consistently found that adhesion contracts in the employment context contain some degree of procedural unconscionability. *Roman*, 172 Cal.App.4th at 1470; *Armendariz v. Found. Health Psychare Servs., Inc.*, 6 P.3d 669, 768 (Cal. 2000). An adhesion contract is a standardized contract which is imposed on a party of weaker bargaining strength on a take-it or leave-it basis. *Ontiveros v. DHL Express, Inc.*, 164 Cal.App.4th 494, 502 (Cal. Ct. App. 2008). When an arbitration agreement is imposed on an employee as a condition of employment and there is no

opportunity to negotiate its terms or reject it without losing the employment opportunity, the arbitration agreement is adhesive. *Id.; see also Armendariz,* 6 P.3d at 768 (finding that few employees are in the position to decline a job offer due to an arbitration agreement); *Martinez v. Master Protection Corp.,* 118 Cal.App.4th 107, 114 (Cal. Ct. App. 2004) (finding arbitration agreement adhesive where it was presented as a specific "condition of employment").

Here, there is no evidence that Acosta had an opportunity to alter the terms of the Agreement or had a meaningful choice in accepting it. It is undisputed that Fair Isaac drafted the contract and presented it to Acosta as a condition to employment. Together, the inequality in bargaining power inherent in the employer-employee relationship, the lack of negotiation, and the preprinted, standardized nature of the document suggest that this was a contract of adhesion and, consequently, procedurally unconscionable.

Fair Isaac maintains that the Agreement was not adhesive because Acosta's assent to the Agreement was the result of his "desire to achieve a favorable compensation package." (Def.'s Reply 4.) Essentially, Fair Isaac argues that Acosta had the option to reject the compensation and go elsewhere for employment. (*Id.*) The Court finds this argument unpersuasive. California courts have rejected the proposition that other employment opportunities, without more, defeat a claim of adhesion. *See, e.g., Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1533-34 (Cal. Ct. App. 1997) (holding that while a corporate executive was not desperately seeking employment, the employment contract was procedurally unconscionable because it was presented on a "take it or leave it basis"); *Gelow v. Central Pacific Mortgage Corp.,* 560 F.Supp.2d 972, 980 (E.D. Cal. 2008) ( finding that "whether plaintiffs were sophisticated business-persons who had other employment opportunities does not bear on the issue" of procedural unconscionability). Instead, the relevant question is

whether Acosta had a meaningful opportunity to reject the Agreement, or alter its terms, and still obtain employment from Fair Isaac. *Gelow,* 560 F.Supp.2d at 981. As discussed above, the Court finds that Acosta had no such opportunity.

It should be noted that the degree of procedural unconscionability in this case is minimal, however. In *Roman,* a California court analyzed an arbitration agreement similar to the one in dispute in this case. There, the court found procedural unconscionability where the arbitration agreement was within a preprinted form prepared by the employer and presented to an employee as a condition for employment. *Roman,* 172 Cal.App.4th at 1470-71. Still, the court noted that the unconscionability inherent in an adhesion contact was limited. *Id.* It reasoned that the arbitration agreement was not buried within a lengthy contract or disguised in any way. *Id.*

Similarly, in this case, the arbitration agreement was conspicuous and clear. In fact, it was an entirely separate document appropriately titled "Agreement to Arbitrate Claims." (Def.'s App. in Supp. of Mot. 8-10.) Acosta was also informed of various terms in the Agreement in an offer letter he received prior to signing. (*Id.* at 7). Additionally, Acosta was a sophisticated businessman with the ability to read and understand the terms prior to entering into the Agreement. Thus, there was no element of surprise and, as a result, only minimal procedural unconscionability.

Still, having determined that there is at least some degree of procedural unconscionability, the Court must now turn to the element of substantive unconscionability.

### ii.     Substantive Unconscionability

Acosta argues that the Agreement is substantively unconscionable. Substantive unconscionability concerns the effect of the terms of a contract. A court must evaluate whether enforcing the terms would result in 'overly harsh' or 'one-sided' results. *Roman,* 172 Cal.App.4th at

1469. Contract terms which distribute risks in an unreasonable or unexpected way will be found to be substantively unconscionable. *Id.* at 1470; *A&M Produce Co.,* 186 Cal.Rptr. at 122. For example, in employment agreements, an arbitration clause will be found to be substantively unconscionable if it requires an employee to arbitrate his claims against the employer, but does not similarly require the employer to submit its claims against the employee to arbitration. *Id.*

Here, the Agreement does not lack mutuality. Its provisions bind both parties equally and set forth procedures which apply with equal weight to both Acosta and Fair Isaac. However, despite being facially-neutral, Acosta argues that 1) the California forum selection clause is unduly oppressive and 2) the imposition of arbitration fees would be a substantial barrier to submitting his claims to arbitration. The Court will consider the forum-selection provision and the fee-splitting provision individually.

      a.      Forum-Selection Provision

Under California law, "if the 'place and manner' restrictions of a forum selection provision are 'unduly oppressive,' or have the effect of shielding the stronger party from liability, then the forum selection provision is unconscionable." *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1287 (9th Cir. 2006) (citing *Bolter v. Superior Court,* 87 Cal.App.4th 900, 909-10 (Cal. Ct. App. 2001)); *Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165, 1177 (N.D. Cal. 2002); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* No. 2:08-cv-00767-MCE-EFB, 2008 WL 3876341, at *10 (E.D. Cal. Aug. 20, 2008). To assess the reasonableness of the "place and manner" provisions in the arbitration clause, a court must take into account the "respective circumstances of the parties." *Bolter,* 87 Cal.App.4th at 909.

Here, the forum-selection clause provides that arbitration proceedings be conducted in

Orange County, California. (Def.'s App. in Supp. of Mot. 8-10.) Acosta is an individual who resides in Coppell, Texas. (Pl.'s Orig. Pet. 1.) As a result, Acosta would have to travel a significant distance out of his home-state to comply with the Agreement's forum requirement. Fair Isaac contends that Acosta's hardship resulting from travel to California, without more, should not invalidate the forum selection provision in the Agreement. However, California courts have found "place and manner" provisions in arbitration agreements to be unconscionable where they would impose financial hardship against the weaker party and essentially preclude them from litigating their claim.

For example in *Bolter*, the California Supreme Court found certain "place and manner" restrictions to be unconscionable where owners of a "mom and pop" franchise located in California had to travel to Utah to arbitrate their claims against an international franchisor. *Bolter*, 87 Cal.App.4th at 909. The *Bolter* court reasoned that the forum selection provision had "no justification other than as a means of maximizing an advantage over the petitioners." *Id.* Similarly, in *Nagrampa*, the Ninth Circuit, relying on the decision in *Bolter*, found a forum-selection clause unconscionable where a contract of adhesion placed venue for arbitration three thousand miles away from the franchisee's home. *Nagrampa*, 469 F.3d at 1287.

The reasoning in both *Bolter* and *Nagrampa* is applicable to this case. The arbitration agreement at issue is an adhesion contract which contains a forum-selection clause placing venue several hundred miles from Acosta's residence. Enforcing this provision in the Agreement would require Acosta to fly across the country to arbitrate a dispute relating to an employment agreement which was entered into and executed in Texas. As was noted in both *Bolter* and *Nagrampa,* this would force Acosta to "incur additional traveling and living expenses and increased costs associated in having counsel familiar" with the local law. *Bolter,* 87 Cal.App.4th at 909. Moreover, Fair Isaac

is a Delaware corporation with its principal place of business in Minneapolis, Minnesota. (Def.'s Notice of Removal ¶ 6.) Given that Fair Isaac does not reside in or near California, this provision seems to have little justification other than to deter employees from bringing legitimate claims against Fair Isaac because of financial constraints. As such, it is substantively unconscionable under California law.

        b.      Fee-Splitting Provision

Next, Acosta argues that the Agreement's fee-splitting provision, which requires him to share the expenses of arbitration equally with Fair Isaac, dictates a finding of substantive unconscionability. In support of this position, Acosta cites the California Supreme Court case *Armendariz v. Foundation Health Psychare Servs., Inc.*, 6 P.3d 669 (Cal. 2000). The *Armerandiz* court found that an employer who imposes mandatory arbitration as a condition to employment must bear all costs associated with arbitrating claims brought under the Fair Employment and Housing Act. *Armendariz,* 6 P.3d at 687. The court reasoned that employees should not be discouraged from vindicating their statutory rights by the additional costs of arbitration. *Id.* In *Little v. Auto Stiegler*, Inc., 29 Cal.4th 1064, 1071 (Cal. 2003), the court clarified its holding in *Armendariz*, stating that the decision imposes the costs of arbitration on employers when unwaivable, statutory rights are at issue. *Id.* at 1084.

The cost-shifting rule stated in *Armendariz* is not applicable to this case. The causes of action here do not involve unwaivable, statutory rights. Rather, Acosta is asserting contract claims to recover commission payments under his employment compensation plan. In *Boghos v. Certain Underwriters at Lloyd's of London,* 36 Cal.4th 495 (Cal. 2005), the California Supreme Court declined to extend the cost-shifting rule in *Armendariz* to common law claims, specifically claims for breach of contract. It found that the cost-shifting rule was a narrow exception to California Code of Civil

Procedure section 1284.2, which provides the default rule for the sharing of arbitration costs. *Id.* at 508. As a result, "to extend *Armendariz* to the arbitration claims not carefully tethered to statutory or constitutional provisions would seem an arbitrary refusal to enforce section 1284.2." *Id.*

While the *Armendariz* cost-shifting rule is not applicable, the Court must nevertheless determine whether the fee-splitting provision is unenforceable under the general principles of unconscionability. In making this determination, the Court should consider the amount of arbitration fees and Acosta's ability to pay at the time the Agreement was executed. *Parada v. Superior Court,* 176 Cal.App.4th 1554, 1579 (Cal. Ct. App. 2009)(considering the amount of arbitration fees and the ability to pay of the party resisting arbitration in making the substantive unconscionability determination).

Acosta claims that it will cost him approximately $5,000 to arbitrate his claims against Fair Isaac. Assuming this figure is an accurate measure of arbitration fees, and there is no evidence to the contrary, the fee-splitting provision still does not meet the threshold test for unconscionability. Acosta is seeking recovery in the amount of $282,636.99 for unpaid commission payments. In light of that loss amount, $5,000, or 1.7% of his potential recovery amount, is not an unreasonable cost for resolving his claim. *See, e.g., Patterson v. ITT Consumer Financial Corp.,* 14 Cal.App.4th 1659, 1666 (finding substantive unconscionability where plaintiff would have to spend $850 to get a single hearing on a $2,000 claim).

Furthermore, Acosta has not presented any evidence regarding his inability to pay. While he does present figures relating to the possible costs of arbitration, these numbers are meaningless without a point of reference from which to determine if they would be prohibitively expensive. *See, e.g., Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 90 (2003)(finding unconscionability where the

plaintiffs presented substantial evidence that the costs of arbitration exceeded their ability to pay). Instead, Acosta states summarily that paying the $5,000 would impose a financial burden on him and his family. Given that Acosta claims his income should have been over $500,000 in 2005, this assertion is simply not sufficient to support a finding of substantive unconscionability. (Pl.'s Orig. Pet. 4.)

The fee-splitting clause at issue dictates that both sides split the costs of arbitration equally. There is no evidence which suggests that this provision is so one-sided as to shock the conscience or that it would make arbitration prohibitively expensive. *See, e.g., Wasserman*, 2007 WL 2228617, at *4 (holding that a clause mandating that the parties share the arbitration costs equally is not substantively unconscionable). Therefore, the Court finds that this provision is not substantively unconscionable.

    iii.    Severance

Having found that the forum-selection provision is substantively unconscionable, the Court must now determine whether it can be severed from the Agreement. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz,* 24 Cal.4th at 124. Moreover, the California Supreme Court has concluded that while a court has discretion on this issue, it should reject the whole only when unconscionability has "permeated" the entire contract. *Id.*

Here, the central purpose of the Agreement is to facilitate the resolution of claims between Fair Isaac and Acosta– regardless of where the actual proceedings take place. Consequently, severing

this provision would not have an effect on the principal purpose of the Agreement. Because the forum-selection clause is not central to the Agreement, the Court finds that it can and should be severed. Accordingly, the Court **ORDERS** that the forum-selection provision be stricken from the Agreement.

B.     *The Scope of the Arbitration Agreement*

The Agreement provides for "the resolution by arbitration of all claims or controversies...that the Company may have against me or that I may have against the Company." (Def.'s App. in Supp. of Mot. 8-10.) Arbitration clauses of this nature classify as broad in scope. *In re Complaint of Honrbeck*, 981 F.2d at 755 ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type.").

The Agreement being of the broad category, the Court finds that it encompasses Acosta's claims against Fair Isaac. Therefore, it must **GRANT** Fair Isaac's request and refer these proceedings to arbitration. *See id.* at 755-56. Accordingly, the Court **DISMISSES** Acosta's claims **with prejudice** so that the parties may arbitrate the claims in accordance with their arbitration agreement.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **STRIKES** the provisions in the Agreement mandating that arbitration proceedings take place in Orange County, California. Upon striking this provision, the Court finds that arbitration is appropriate and thereby **GRANTS** Defendant's Motion to Compel Arbitration (doc. 3) and **DISMISSES** Plaintiff's claims **with prejudice**. The parties are directed to resolve their dispute through arbitration in accordance with their agreement.

SO ORDERED.
DATED October 28, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE